UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ROBERT DEPALMA,

       Plaintiff,

 -against-                 1:14-cv-0058 (LEK/CFH)

NEW YORK STATE, *et al.*,

       Defendants.

## MEMORANDUM-DECISION and ORDER

**I. INTRODUCTION**

*Pro se* Plaintiff Robert Depalma ("Plaintiff") commenced the present action against Defendants Scott Don ("Defendant")[1], New York State, and John Does #1 and #2 pursuant to 42 U.S.C. § 1983. Dkt. No. 1 ("Complaint"). Presently before the Court is Defendant's Motion for summary judgment. Dkt. Nos. 40 ("Motion"); 40-3 ("Memorandum"); 40-4 ("Defendant's Statement of Material Facts"). For the following reasons, the Motion is denied.

**II. BACKGROUND**[2]

 **A. Plaintiff's Underlying Arrest**

The instant action arises out of the circumstances of Plaintiff's arrest on February 24, 2011.

---

 [1] On April 3, 2014, the Court adopted the Report-Recommendation from U.S. Magistrate Judge Christian F. Hummel, Dkt. No. 5, and dismissed New York State, John Doe #1, and John Doe #2 as Defendants, leaving only Scott Don as Defendant. Dkt. No. 7. References made to "Defendant" will therefore refer solely to Scott Don.

 [2] On a Motion for summary judgment, the facts are drawn from the parties' statements of material facts, and ambiguities are resolved and inferences drawn in favor of the non-moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Plaintiff has failed to submit a statement of material facts in compliance with Local Rule 7.1(a)(3). The allowance of Plaintiff's version of the facts is discussed below in Part IV.A.

Def.'s SMF ¶¶ 8, 33. Defendant had been instructed to arrest Plaintiff that day pursuant to a warrant issued on February 18, 2011. Id. ¶¶ 5-6. Defendant observed Plaintiff in a minivan, which Defendant and his associates followed to a private residence. Id. ¶ 13, Dkt. No. 41 ("Response") at 4.[3] Defendant and his associates exited their vehicle, at which point Plaintiff ran into a nearby wooded area. Def.'s SMF ¶¶ 14-16; Resp. at 4. Defendant states that they had identified themselves as police and were wearing identifying clothing, but Plaintiff states that the men that he saw approaching were "unknown." Def.'s SMF ¶¶ 15-16; Resp. at 4. Defendant was behind his two associates in this pursuit due to falling on ice upon exiting the vehicle. Def.'s SMF ¶ 17. Defendant was aware of Plaintiff's prior conviction on a weapons charge, but stated that it was unclear at the time of the pursuit if Plaintiff was armed. Def.'s SMF ¶¶ 34-35. Plaintiff then heard one of his pursuers identify himself as police. Id. ¶ 20; Resp. at 4. At this point, Plaintiff spun around, pulled his hands up, and then was tackled to the ground by one of Defendant's associates. Def.'s SMF ¶ 21; Resp. at 4. Defendant helped to restrain Plaintiff on the ground; he states that Plaintiff was "rolling and twisting." Def.'s SMF ¶ 24. Plaintiff claims that an officer other than Defendant struck him in the face with a gun, and another officer kicked him in the face and ribs. Id. ¶¶ 48-50; Resp. at 4. Plaintiff then claims that Defendant "forcefully" slammed his knee onto the left side of Plaintiff's face, resulting in the right side of his face being severely bruised. Resp. at 4, 8. Defendant states that he was "not positioned near plaintiff's upper body at any time" but that Plaintiff only sustained "minor" or "pink" lacerations on the left side of his face. Def.'s SMF ¶¶ 28, 55.

---

[3] The Court uses the pagination assigned by the Court's Electronic Court Filing ("ECF") system.

### B. Procedural History

Plaintiff commenced this action on January 21, 2014, asserting a Fourth Amendment excessive force claim against New York State and the three officers involved in his arrest. Compl. On January 27, 2014, U.S. Magistrate Judge Christian F. Hummel granted Plaintiff leave to proceed *in forma pauperis* and recommended dismissal of all claims except those against Defendant in his individual capacity. Dkt. No. 5. The Court adopted the Report-Recommendation on April 3, 2014. Dkt. No. 7. Defendant filed an Answer on June 10, 2014. Dkt. No. 11.

Defendant filed a Motion for summary judgment on July 30, 2015. Mot. Defendant argues that (1) Plaintiff has failed to meet the standard for excessive force discussed in Graham v. Connor, 490 U.S. 386 (1989), and (2) Defendant is entitled to qualified immunity. Mem. at 7-14. Plaintiff filed his Response on August 31, 2015.[4] Resp. In a Reply filed September 9, 2015, Defendant argued that Plaintiff had failed to raise an issue of material fact and that Defendant's version of the facts should be accepted due to Plaintiff's failure to comply with Local Rule 7.1(a)(3). Dkt. No. 45 ("Reply"). Plaintiff filed a Letter Motion on September 21, 2015 requesting leave to amend his Response to comply with Rule 7.1(a)(3). Dkt. No. 46.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) instructs a court to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a

---

[4] Defendant filed a Letter Motion requesting that Plaintiff's response be disallowed as it was filed after the August 24, 2015 deadline. Dkt. No. 42. Judge Hummel denied Defendant's Letter Motion and instead extended the deadline for a reply until September 9, 2015. Dkt. No. 43.

3

reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991).

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the non-moving party will bear the burden of proof on a specific issue at trial, the moving party may satisfy its own initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim. Id. If the moving party carries its initial burden, then the non-moving party bears the burden of demonstrating a genuine issue of material fact. Id. This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). A court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994).

**IV.     DISCUSSION**

**A. Plaintiff's Motion to Amend His Response**

Defendant correctly points out in his Reply that Plaintiff has failed to comply with Local Rule 7.1(a)(3). Reply at 3-4. Local Rule 7.1(a)(3) states that "[t]he Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not

specifically controvert." N.D.N.Y. L.R. 7.1(a)(3). Before the Court is a Letter Motion from Plaintiff requesting leave to amend his Response to comply with Local Rule 7.1(a)(3). While Defendant correctly states that *pro se* litigants are not excused from compliance with Local Rule 7.1(a)(3), Alzawahra v. Albany Med. Ctr., No. 11-CV-227, 2012 WL 5386565, at *2 (N.D.N.Y. Nov. 1, 2012), the Court finds that considering Plaintiff's submitted facts will better serve the interests of justice. See Assoc. for Retarded Citizens of Conn., Inc. v. Thorne, 68 F,3d 547, 553 (2d Cir. 1995) ("[D]istrict courts have 'inherent power to decide when a departure from its Local Rules should be excused or overlooked.'" (quoting Somlyo v. J. Lu-Rob Enters., 932 F.2d 1043, 1048 (2d Cir. 1991))). Given the Statement of Facts laid out in Plaintiff's Response, the Court finds no reason to further delay this case to require Plaintiff to amend his Response merely to restructure his narrative to comply with Local Rule 7.1(a)(3). Therefore, the Court will address Plaintiff's objections to Defendant's facts, and Plaintiff's Letter Motion to amend his Response is denied.

**B. Excessive Force**

"[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest . . . should be analyzed under the Fourth Amendment . . . ." Graham v. Connor, 490 U.S. at 395. In order to determine whether excessive force was used in connection with an arrest, "the use of force [must be] objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to [the officers'] underlying intent or motivation.'" Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006) (quoting Graham, 490 U.S. at 397). An inquiry of excessive force in connection with an arrest "requires careful attention to . . . the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396; accord

5

Brown v. City of New York, 798 F.3d 94, 100 (2d Cir. 2015). The reasonableness of the amount of force "'must be judged from the perspective of a reasonable officer on the scene . . . at the moment' the force is used." Rogoz v. City of Hartford, 796 F.3d 236, 246-47 (2d Cir. 2015) (quoting Graham, 490 U.S. at 396).

Defendant argues that he was positioned near Plaintiff's lower body from the time at which he caught up to Plaintiff until Plaintiff was handcuffed, but that in the alternative, Plaintiff suffered only de minimis injuries from the contact with Defendant's knee. Def.'s SMF ¶¶ 27-28, 54-55. Plaintiff claims that he suffered significant facial injuries from Defendant's knee, and that this occurred after he had been handcuffed. Resp. at 4, 7-8.

As a preliminary matter, the Court finds that the only incident that forms the basis for Plaintiff's excessive force claim is Defendant slamming his knee into Plaintiff's face, an even that Defendant denies occurred. Plaintiff does not mention any other incident in which Defendant applied excessive force. While the Court may consider the active flight and the potential for Plaintiff, while fleeing, to pose an immediate threat to the safety of the officers, those are relevant to judge "the perspective of a reasonable officer" when Defendant actually applied the force. See Tracy v. Freshwater, 623 F.3d 90, 98 (2d Cir. 2010) (discussing the plaintiff's previous attempt to flee in determining that an officer's later conduct was objectively reasonable).

The events here are quite similar to the facts in Rogoz, 796 F.3d 236. The plaintiff in that case was in a car, saw a man exit a car that had been following him and run toward him, and executed a number of illegal driving maneuvers to get away from the man. Id. at 240. When the plaintiff heard police sirens and realized that he was being pursued by police, he pulled over to the side of the road. Id. at 241. The plaintiff then complied with the officers' instructions to exit the

6

vehicle with his hands up and lay face down on the ground with his hands behind his back. Id. While the plaintiff was lying on the ground waiting to be handcuffed, an officer jumped onto his back and landed on his knees, fracturing the plaintiff's ribs and spine. Id. The most severe crime that the plaintiff was charged with was possession of narcotics. Id. The district court granted summary judgment, finding that the force used was not excessive and that the defendants were entitled to qualified immunity. Id. at 243-45. The Second Circuit reversed, noting that two of the Graham factors, the plaintiff's immediate threat to officers and the active resistance to arrest, could not have been met as a matter of law. Id. at 247-48. The Second Circuit concluded that a jury could easily find that neither factor was satisfied, rejecting the argument that the prior circumstances evidenced a level of urgency that required a finding in favor of the defendants. Id. at 248. The Second Circuit has subsequently noted that the weighting of these factors is not precise or rigid and that they should be taken in the aggregate. Brown, 798 F.3d at 103. However, the Second Circuit also cautioned that "[a] court's role in considering excessive force claims is to determine whether a jury, instructed as to the relevant factors, could reasonably find that the force used was excessive." Id.

Plaintiff was arrested for criminal possession and sale of a controlled substance in the fifth degree, N.Y. PENAL L. §§ 220.06; 220.31, possession of marijuana in the fourth degree, N.Y. PENAL L. § 221.15, and resisting arrest. The first two offenses are the most severe and constitute class D felonies in New York, which carry a maximum sentence of thirty months. N.Y. Penal L. § 70.70(2)(a)(iii). While arrests for felony offenses are clearly more urgent, the felonies at issue here are the fourth most severe of New York's five classes of felonies. N.Y. PENAL L. § 55.05. Furthermore, Penal Law §§ 220.06 and 220.31 do not include violence as an element in any form.

The plaintiff in Rogoz was ultimately charged with felony drug possession, but the Second Circuit did not directly address the district court's finding that such a crime was severe. 796 F.3d at 247. As a result, the Court finds that the severity of the crime does not favor a finding that the force was unreasonable.

However, the Court finds that it cannot establish as a matter of law that Plaintiff was resisting arrest or posed a sufficient a potential threat to the officers such that a knee to Plaintiff's face was objectively reasonable. In drawing all inferences in favor of Plaintiff, Reeves, 530 U.S. at 150, the Court notes that neither party has discussed whether Plaintiff was actively resisting arrest at the time of Defendant's alleged application of force to Plaintiff's face. In Rogoz, the plaintiff was not actively resisting at any point after he pulled over to the side of the road. 796 F.3d at 241. Defendant states that Plaintiff was "rolling and twisting" on the ground while the officers were trying to handcuff him. Def.'s SMF ¶ 24. If Plaintiff was attempting to actively resist or if Plaintiff could still have been reasonably considered a threat to the officers, it is likely that Defendant's alleged use of force was not objectively unreasonable. However, Defendant also states that once Plaintiff was restrained, the remaining events unfolded "without incident." Id. ¶ 29. If the application of force occurred once Plaintiff had been restrained, as Plaintiff claims in his Response, and Plaintiff had stopped resisting, as Defendant states in his timeline, the situation becomes almost identical to Rogoz.

Defendant also claims that it was unclear whether Plaintiff was armed throughout the pursuit. Id. ¶ 35. However, the same analysis regarding Plaintiff's "rolling and twisting" should apply here. Once Plaintiff's active resistance had ceased, it should have been objectively clear to Defendant that Plaintiff was not going to access any weapon that he might have. Once again, under

8

the facts most favorable to Plaintiff, Rogoz controls.

Neither party further develops the facts relating to Defendant's alleged application of force to Plaintiff's face. Plaintiff describes it as a "slamming" of Defendant's knee into his cheek, and Defendant describes the resulting injury as minimal. Resp. at 4; Def.'s SMF ¶ 55. Construing the facts in the light most favorable to Plaintiff, the Court finds that a reasonable jury could determine that at the time that the force was being applied, Plaintiff had stopped resisting and Defendant's application of force was not objectively related to the previous pursuit and was not proportional to Defendant's state of restraint at the time. While not every push or shove constitutes excessive force, Lennon v. Miller, 66 F.3d 416, 426 (2d Cir. 1995), the Court cannot say that the alleged application of force by Defendant is, as a matter of law, indisputably not excessive, and thus denies Defendant's Motion for summary judgment on this ground.

### C. Qualified Immunity

Defendant also argues that he is entitled to qualified immunity and thus entitled to summary judgment. The doctrine of qualified immunity protects government officials from liability for civil damages as long as their conduct does not "violate clearly-established rights of which an objectively reasonable official would have known." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999); accord Tracy, 623 F.3d at 95-96. The qualified immunity inquiry therefore proceeds in two parts: first, whether a statutory or constitutional right was violated when the evidence is "viewed in the light most favorable to the plaintiff," and whether that statutory or constitutional right "was clearly established at the time of the alleged violation." Tracy, 623 F.3d at 96.

A constitutional right is "clearly established" when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that

9

right." Mollica v. Volker, 229 F.3d 366, 370 (2d Cir. 2000) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).[5] The Second Circuit has found three factors relevant to this inquiry: (1) the right in question should be defined with "reasonable specificity," (2) Supreme Court and Second Circuit decisions support the existence of the right in question, and (3) a reasonable defendant would understand that their conduct is unlawful under existing law. Mollica, 229 F.3d at 371 (quoting Shechter v. Comptroller of the City of New York, 79 F.3d 265, 271 (2d Cir. 1996)). The Court has, on numerous occasions, found that the right to be free from excessive force during an arrest is clearly established. See Dudley v. City of Glens Falls, No. 12-cv-429, 2013 WL 5347291, at *6 (N.D.N.Y. Sept. 23, 2013); Porath v. Bird, No. 11-cv-963, 2013 WL 2418253, at *9 (N.D.N.Y. June 3, 2013); Galunas v. Reynolds, No. 11-cv-14, 2013 WL 316618, at *9 (N.D.N.Y. Jan. 28, 2013); see also Breen v. Garrison, 169 F.3d 152, 153 (2d Cir. 1999); Calamia v. City of New York, 879 F.2d 1025, 1035 (2d Cir. 1989); Robison v. Via, 821 F.2d 913, 923-24 (2d Cir. 1987). The Court follows these decisions and finds that on February 24, 2011, the right to be free from excessive force during an arrest was clearly established.

"If there is no dispute as to any material fact, the issue of whether the official's conduct was objectively reasonable is an issue of law to be decided by the court." Dudley, 2013 WL 5347291, at *6 (citing Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007)). However, the Second Circuit has favored an approach where unresolved factual issues are resolved by the jury before a court makes the final determination regarding qualified immunity. Id. (citing Zellner, 494 F.3d at 368);

---

[5] While this is the second prong of the qualified immunity analysis, the Supreme Court has relaxed the rigid ordering prescribed by Saucier v. Katz, 533 U.S. 194 (2001), and stated that district courts have discretion to consider either element of the qualified immunity claim first. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

10

see also Stephenson v. Doe, 332 F.3d 68, 81 (2d Cir. 2003). Indeed, a finding of qualified immunity is appropriate when "the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances." Lennon, 66 F.3d at 421.

Given the uncertainty mentioned above regarding the timing and severity of Defendant's alleged actions, the Court finds that summary judgment on qualified immunity is not warranted based on the facts provided by the parties. It is not the Court's responsibility, on a motion for summary judgment, to resolve questions of fact. Gallo, 22 F.3d at 1224. When analyzing a claim of qualified immunity, the facts must be construed in favor of the plaintiffs. Lennon, 66 F.3d at 420. Therefore, the possibilities that Defendant did slam his knee into Plaintiff's face, that Defendant did so after Plaintiff had stopped resisting, that Defendant did so with an amount of force that would be objectively assumed to cause serious injury, and that Defendant did so after any imminent threat of danger had reasonably evaporated must be taken as true as they are either not controverted by Defendant's Statement of Material Facts or disputed by Plaintiff. As such, the facts submitted by both parties are not sufficient to overcome any of these inferences in Plaintiff's favor. Therefore, Defendant is not entitled to qualified immunity on summary judgment in this case.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Letter Motion (Dkt. No. 46) is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion (Dkt. No. 40) for summary judgment is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   March 31, 2016
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge